1   Andy D. Birchfield, Jr. (BIR006)
    Navan Ward, Jr. (WAR062)
2   Frank Woodson (WOO034)
    BEASLEY, ALLEN, CROW, METHVIN,
3   PORTIS & MILES, P.C.
    Post Office Box 4160
4   Montgomery, Alabama 36103-4160
5   (334) 269-2343 telephone
    (334) 954-7555 facsimile
6
    Attorneys for Plaintiffs
7

8

9                   IN THE UNITED STATES DISTRICT COURT

10                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                          (SAN FRANCISCO DIVISION)

12  | IN RE: BEXTRA AND CELEBREX | MDL No. 1699 |
    | MARKETING SALES PRACTICES AND | |
13  | PRODUCT LIABILITY LITIGATION | |
    | | |
14  | _____ | |
    | JOHN ADAMS (SC); | |
15  | BARBARA BRADLEY (AK); | Case No. _____ |
    | RUBY BREWER (MS); | |
16  | JUNE BUCHHOLZ (MS); | |
    | OSBORNE BURNSIDE (SC); | |
17  | BILL J. DAVIS (MS); | **CIVIL COMPLAINT** |
    | DAVID L. DAVIS (MS); | |
18  | JIM DELOY (MS); | **JURY TRIAL DEMANDED** |
    | LARRY DEMMING (MS); | |
19  | JOYCE A. DOETSCH (MI); | |
    | ISOLDE FERRIS (MS); | |
20  | KAY GOINS (MI); | |
    | JULIE E. GREER (MS); | |
21  | JOAN HADAWAY (MI); | |
    | JOE HADDAD (MA); | |
22  | JERRY DINE HARDEN (MS); | |
    | DELORIS V. HAYES (MI); | |
23  | FRANKLIN D. HOWARD (MS); | |
    | HOWARD JORDAN (AR); | |
24  | DENNY KIROFF (MI); | |
    | MICHAEL W. LENLING (MI); | |
25  | LOIS LIVINGSTON (MI); | |
    | IRA E. MATTHEWS (MS); | |
26  | RANDY MATTHEWS (SC); | |
    | NAOMI PORTER McKNIGHT (MS); | |
27  | JAMES L. MITCHELL (MS); | |
    | PHILLIP NECAISE (MS); | |
28  | PHYLLIS J. NOVAK (WI); | |
    | ROGER G. NYCE (MA); | |

1    JOANN O'LEARY (SC);
     CLARA OLMSTED (SD);
2    WILLIAM LAMAR PATTERSON (SC);
     JUDY A. POTTER (MI);
3    LEROY RAEL (NM);
     LORINE RILEY (MS);
4    JOSEPH RISTINO (MA);
     CHERYL ROBINSON (MI);
5    ROSA LEE ROBINSON (MI);
     BILLIE ROLAND (MI);
6    KATHLEEN RONCA (MA);
     NORMAN RUFLEDT (WI);
7    GERALDINE RULE (NM);
     STEPHEN SCOTT (WA);
8    VIOLA SCOTT (MS);
     EDGAR SELF (SC);
9    JOHN W. SIMMONS (MS);
     AGNES STAPLER (MS);
10   JOHN STELLABOTTA (MD);
     MARJORIE STONE (WA);
11   SHIRLEY TATE (MS);
     AKIRA TERAWAKI (SC);
12   CHARLIE THORNTON (MS);
     CATHERINE WEIGEL (WA);
13   JAMES WILLIAMS (MI);
     ART WINKLES (MI); AND
14   CATHERINE ANN WRIGHT (MI);

15              Plaintiffs,

16   v.

17   PFIZER, INC., PHARMACIA
     CORPORATION, G.D. SEARLE LLC, (FKA
18   G.D. SEARLE & CO.), and MONSANTO
     COMPANY,
19
                Defendants.
20

21       Plaintiffs John Adams, Barbara Bradley, Ruby Brewer, June Buchholz, Osborne Burnside,

22   Bill J. Davis, David L. Davis, Jim Deloy, Larry Demming, Joyce A. Doetsch, Isolde Ferris, Kay

23   Goins, Julie E. Greer, Joan Hadaway, Joe Haddad, Jerry Dine Harden, Delois V. Hayes, Franklin

24   D. Howard, Howard Jordan, Denny Kiroff, Michael W. Lenling, Lois Livingston, Ira E.
25   Matthews, Randy Matthews, Naomi Porter McKnight, James L. Mitchell, Phillip Necaise, Phyllis
26   J. Novak, Roger G. Nyce, Joann O'Leary, Clara Olmstead, William Lamar Patterson, Judy A.
27   Potter, Leroy Rael, Lorine Riley, Joseph Ristino, Cheryl Robinson, Rosa Lee Robinson, Billie
28
                                          - 2 -                                    COMPLAINT

Roland, Kathleen Ronca, Norman Rufledt, Geraldine Rule, Stephen Scott, Viola Scott, Edgar Self, John W. Simmons, Agnes Stapler, John Stellabotta, Marjorie Stone, Shirely Tate, Akira Terawaki, Charlie Thornton, Catherine Weigel, James Williams, Art Winkles and Catherine Ann Wright, by and through their counsel, bring this action against Defendants PFIZER, INC., PHARMACIA CORP., MONSANTO COMPANY, and G.D. SEARLE LLC. (hereinafter collectively "Defendants") and allege as follows:

## I.    **PARTIES**

1.      This is an action for damages arising from Defendants' design, manufacture, sale, testing, marketing, advertising, promotion, and/or distribution of the unsafe medication Celecoxib, trade name CELEBREX® ("CELEBREX").

2.      Plaintiff John Adams was at all relevant times adult resident citizen of the State of South Carolina, County of Dorchester. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about December 15,, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

3.      Plaintiff Barbara Bradley was at all relevant times adult resident citizen of the State of Arkansas, County of Orange. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about November 28,. 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

4.      Plaintiff Ruby Brewer was at all relevant times adult resident citizen of the State of Mississippi, County of Tallahatchie. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about March 17, 2005, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

5.     Plaintiff June Buchholz was at all relevant times adult resident citizen of the State of Mississippi, County of Harrison. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious neurological injury or stoke on or about December 4, 2002, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

6.     Plaintiff Osborne Burnside was at all relevant times adult resident citizen of the State of South Carolina, County of Laurens. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious neurological injury or stoke on or about August 8, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

7.     Plaintiff Bill J. Davis was at all relevant times adult resident citizen of the State of Mississippi, County of Jones. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about December 7, 2001, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

8.     Plaintiff David L. Davis was at all relevant times adult resident citizen of the State of Mississippi, County of Marion. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about June 30, 2003, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

9.     Plaintiff Jim Deloy was at all relevant times adult resident citizen of the State of South Dakota, County of Butte. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

COMPLAINT

1  cardiovascular injury or heart attack on or about June 28, 2003, which has caused and will

2  continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

3      10.    Plaintiff Larry Demming was at all relevant times adult resident citizen of the

4  State of Mississippi, County of Montgomery. Plaintiff was prescribed and began taking

5  CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX,

6  Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not

7  limited to, serious cardiovascular injury or heart attack on or about June 23, 2002, which has

8  caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious

9  injury or death.

10     11.    Plaintiff Joyce A. Doetsch was at all relevant times adult resident citizen of the

11 State of Michigan, County of Oakland. Plaintiff was prescribed and began taking CELEBREX for

12 the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

13 severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

14 cardiovascular injury or heart attack on or about October 23, 1999, which has caused and will

15 continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

16     12.    Plaintiff Isolde Ferris was at all relevant times adult resident citizen of the State of

17 Michigan, County of Genesee. Plaintiff was prescribed and began taking CELEBREX for the

18 treatment f pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

19 cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

20 cardiovascular injury or heart attack on or about December 15, 2001, which has caused and will

   continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

21     13.    Plaintiff Kay Goins was at all relevant times adult resident citizen of the State of

22 Michigan, County of Monroe. Plaintiff was prescribed and began taking CELEBREX for the

23 treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

24 cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

25 neurological injury or stoke on or about March 24, 2003, which has caused and will continue to

26 cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

27     14.    Plaintiff Julie E. Greer was at all relevant times adult resident citizen of the State

28 of Mississippi, County of Leake. Plaintiff was prescribed and began taking CELEBREX for the

COMPLAINT

1    treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

2    cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

3    cardiovascular injury or heart attack on or April 21, 2001 which has caused and will continue to

4    cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

5        15.    Plaintiff Joan Hadaway was at all relevant times adult resident citizen of the State

6    of Michigan, County of Van Buren. Plaintiff was prescribed and began taking CELEBREX for

7    the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

8    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

9    cardiovascular injury or heart attack on or about April 15, 2004, which has caused and will

10   continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

11       16.    Plaintiff Joe Haddad was at all relevant times adult resident citizen of the State of

12   Massachusetts, County of Essex. Plaintiff was prescribed and began taking CELEBREX for the

13   treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

14   cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

15   cardiovascular injury or heart attack on or about June 16, 2003, which has caused and will

16   continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

17       17.    Plaintiff Jerry Dine Harden was at all relevant times adult resident citizen of the

18   State of Mississippi, County of Harrison. Plaintiff was prescribed and began taking CELEBREX

19   for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

20   severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

21   cardiovascular injury or heart attack on or about March 2, 2004, which has caused and will

     continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

22       18.    Plaintiff Deloris V. Hayes was at all relevant times adult resident citizen of the

23   State of Michigan, County of Branch. Plaintiff was prescribed and began taking CELEBREX for

24   the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

25   severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

26   cardiovascular injury or heart attack on or about March 3, 2001, which has caused and will

27   continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

28

- 6 -                                                    COMPLAINT

19.     Plaintiff Franklin D. Howard was at all relevant times adult resident citizen of the State of Mississippi, County of Marshall. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about September 17, 2002 which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

20.     Plaintiff Howard Jordan was at all relevant times adult resident citizen of the State of Arkansas, County of Washington. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about November 8, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

21.     Plaintiff Denny Kiroff was at all relevant times adult resident citizen of the State of Michigan, County of Roscommon. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about August 30, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

22.     Plaintiff Michael W. Lenling was at all relevant times adult resident citizen of the State of Michigan, County of Monroe. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about November 11, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

23.     Plaintiff Lois Livingston was at all relevant times adult resident citizen of the State of Michigan, County of Tuscola. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

1    cardiovascular injury or heart attack on or about November 5, 2002, which has caused and will

2    continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

3        24.    Plaintiff Ira E. Matthews was at all relevant times adult resident citizen of the State

4    of Mississippi, County of Scott. Plaintiff was prescribed and began taking CELEBREX for the

5    treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

6    cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

7    cardiovascular injury or heart attack on or about November 22, 2002, which has caused and will

8    continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

9        25.    Plaintiff Randy Matthews was at all relevant times adult resident citizen of the

10    State of South Carolina, County of Florence. Plaintiff was prescribed and began taking

11    CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX,

12    Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not

13    limited to, serious cardiovascular injury or heart attack on or about December 19, 2004, which

14    has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further

     serious injury or death.

15

16        26.    Plaintiff Naomi Porter McKnight was at all relevant times adult resident citizen of

17    the State of Mississippi, County of Bolivar. Plaintiff was prescribed and began taking

      CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX,

18    Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not

19    limited to, serious cardiovascular injury or heart attack on or about October 31, 2004, which has

20    caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious

21    injury or death.

22        27.    Plaintiff James L. Mitchell was at all relevant times adult resident citizen of the

23    State of Mississippi, County of Coahoma. Plaintiff was prescribed and began taking CELEBREX

24    for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

25    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

26    cardiovascular injury or heart attack on or about May 3, 2004, which has caused and will continue

27    to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

28

                   COMPLAINT

28.     Plaintiff Phillip Necaise was at all relevant times adult resident citizen of the State of Mississippi, County of Harrison. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about February 1, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

29.     Plaintiff Phyllis J. Novak was at all relevant times adult resident citizen of the State of Wisconsin, County of Florence. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about March 2, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

30.     Plaintiff Roger G. Nyce was at all relevant times adult resident citizen of the State of Massachusetts, County of Hampden. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about May 9, 2002, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

31.     Plaintiff Joann O'Leary was at all relevant times adult resident citizen of the State of South Carolina, County of Jasper. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about October 27, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

32.     Plaintiff Clara Olmsted was at all relevant times adult resident citizen of the State of South Dakota, County of Beadle. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

1  cardiovascular injury or heart attack on or about May 14, 2005, which has caused and will
2  continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

3      33.    Plaintiff William Lamar Patterson was at all relevant times adult resident citizen of
4  the State of South Carolina, County of Laurens. Plaintiff was prescribed and began taking
5  CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX,
6  Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not
7  limited to, serious cardiovascular injury or heart attack on or about July 26, 2002, which has
8  caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious
9  injury or death.

10     34.    Plaintiff Judy A. Potter was at all relevant times adult resident citizen of the State
11  of Michigan, County of Ogemaw. Plaintiff was prescribed and began taking CELEBREX for the
12  treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe
13  cardiovascular injuries while taking CELEBREX, including, but not limited to, serious
14  cardiovascular injury or heart attack on or about August 24, 2004, which has caused and will
    continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

15
16     35.    Plaintiff Leroy Rael was at all relevant times adult resident citizen of the State of
17  New Mexico, County of San Miguel. Plaintiff was prescribed and began taking CELEBREX for
18  the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered
19  severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious
20  cardiovascular injury or heart attack on or about June 30, 2003 and on or about June 26, 2004,
21  which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of
    further serious injury or death.  Also, as a direct and proximate result of using CELEBREX,
22  Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not
23  limited to, serious neurological injury or stoke on or about September 25, 2004, which has caused
24  and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or
25  death.

26     36.    Plaintiff Lorine Riley was at all relevant times adult resident citizen of the State of
27  Mississippi, County of Humphreys. Plaintiff was prescribed and began taking CELEBREX for
28  the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

1    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

2    cardiovascular injury or heart attack on or about August 12, 2003, which has caused and will

3    continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

4        37.    Plaintiff Jospeh Ristino was at all relevant times adult resident citizen of the State

5    of Massachusetts, County of Suffolk. Plaintiff was prescribed and began taking CELEBREX for

6    the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

7    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

8    neurological injury or stoke on or about May 16, 2002, which has caused and will continue to

9    cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

10        38.    Plaintiff Cheryl Robinson was at all relevant times adult resident citizen of the

11   State of Maryland, County of Baltimore. Plaintiff was prescribed and began taking CELEBREX

12   for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

13   severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

14   cardiovascular injury or heart attack on or about September 22, 2002, which has caused and will

     continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

15
16        39.    Plaintiff Rosa Lee Robinson was at all relevant times adult resident citizen of the

17   State of Michigan, County of Wayne. Plaintiff was prescribed and began taking CELEBREX for

18   the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

19   severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

20   cardiovascular injury or heart attack on or about October 16, 2001, which has caused and will

     continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

21        40.    Plaintiff Billie Roland was at all relevant times adult resident citizen of the State of

22   Michigan, County of Macomb. Plaintiff was prescribed and began taking CELEBREX for the

23   treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

24   cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

25   cardiovascular injury or heart attack on or about February 3, 2003, which has caused and will

26   continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

27        41.    Plaintiff Kathleen Ronca was at all relevant times adult resident citizen of the State

28   of Massachusetts, County of Franklin. Plaintiff was prescribed and began taking CELEBREX for

1    the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

2    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

3    cardiovascular injury or heart attack on or about June 8, 2001, which has caused and will continue

4    to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

5        42.    Plaintiff Norman Rufledt was at all relevant times adult resident citizen of the

6    State of Wisconsin, County of Dunn. Plaintiff was prescribed and began taking CELEBREX for

7    the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

8    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

9    cardiovascular injury or heart attack on or about December 4, 1999, which has caused and will

10   continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

11       43.    Plaintiff Geraldine Rule was at all relevant times adult resident citizen of the State

12   of New Mexico, County of Otero. Plaintiff was prescribed and began taking CELEBREX for the

13   treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

14   cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

15   cardiovascular injury or heart attack on or about May 14, 2003, which has caused and will

16   continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

17       44.    Plaintiff Stephen Scott was at all relevant times adult resident citizen of the State

18   of Washington, County of Island. Plaintiff was prescribed and began taking CELEBREX for the

19   treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

20   cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

21   cardiovascular injury or heart attack on or about October 29, 2004, which has caused and will

     continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

22       45.    Plaintiff Viola Scott was at all relevant times adult resident citizen of the State of

23   Mississippi, County of Warren. Plaintiff was prescribed and began taking CELEBREX for the

24   treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

25   cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

26   cardiovascular injury or heart attack on or about October 2, 2003, which has caused and will

27   continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

28

- 12 -                                          COMPLAINT

46.    Plaintiff Edgar Self was at all relevant times adult resident citizen of the State of South Carolina, County of Darlington. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about September 16, 2002, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

47.    Plaintiff John W. Simmons was at all relevant times adult resident citizen of the State of Mississippi, County of Lamar. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about August 28, 2000, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

48.    Plaintiff Agnes Stapler was at all relevant times adult resident citizen of the State of Mississippi, County of Madison. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about August 21, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

49.    Plaintiff John Stellabotta was at all relevant times adult resident citizen of the State of Maryland, County of Calvert. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about March 3, 2000, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

50.    Plaintiff Marjorie Stone was at all relevant times adult resident citizen of the State of Washington, County of Mason. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

1    cardiovascular injury or heart attack on or about December 11, 2000, which has caused and will

2    continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

3        51.    Plaintiff Shirley Tate was at all relevant times adult resident citizen of the State of

4    Mississippi, County of Jackson. Plaintiff was prescribed and began taking CELEBREX for the

5    treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

6    cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

7    neurological injury or stoke on or about April 2, 2001, which has caused and will continue to

8    cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

9        52.    Plaintiff Akira Terawaki was at all relevant times adult resident citizen of the State

10    of South Carolina, County of Spartanburg. Plaintiff was prescribed and began taking CELEBREX

11    for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

12    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

13    cardiovascular injury or heart attack on or about September 1, 2002, which has caused and will

14    continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

15        53.    Plaintiff Charlie Thornton was at all relevant times adult resident citizen of the

16    State of Mississippi, County of Panola. Plaintiff was prescribed and began taking CELEBREX for

17    the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

18    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

19    cardiovascular injury or heart attack on or about September 4, 2001, which has caused and will
continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

20        54.    Plaintiff Catherine Weigel was at all relevant times adult resident citizen of the

21    State of Washington, County of Larimer. Plaintiff was prescribed and began taking CELEBREX

22    for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered

23    severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious

24    neurological injury or stoke on or about April 3, 2003, which has caused and will continue to

25    cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

26        55.    Plaintiff James Williams was at all relevant times adult resident citizen of the State

27    of Michigan, County of Muskegon. Plaintiff was prescribed and began taking CELEBREX for the

28    treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe

cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about May 13, 2005, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

56.     Plaintiff Art Winkles was at all relevant times adult resident citizen of the State of Michigan, County of Genesee. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about October 14, 2002, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

57.     Plaintiff Catherine Ann Wright was at all relevant times adult resident citizen of the State of Michigan, County of Roscommon. Plaintiff was prescribed and began taking CELEBREX for the treatment of pain. As a direct and proximate result of using CELEBREX, Plaintiff suffered severe cardiovascular injuries while taking CELEBREX, including, but not limited to, serious cardiovascular injury or heart attack on or about January 21, 2004, which has caused and will continue to cause Plaintiff damages and places Plaintiff at risk of further serious injury or death.

58.     Defendant Pfizer Inc. ("Pfizer") is a Delaware corporation with its principal place of business in New York, New York. In 2003, Pfizer acquired Pharmacia Corporation for nearly \$60 billion. At all relevant times Pfizer and/or its predecessors in interest were engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Celecoxib, under the trade name CELEBREX in California and nationwide.

59.     Defendant G. D. Searle, LLC, formerly known as G. D. Searle & Co. ("Searle") is a Delaware corporation with its principal place of business in Illinois. At all relevant times, Searle has been engaged in the business of marketing and selling CELEBREX nationwide and in California. Searle is a subsidiary of Pfizer, acting as its agent and alter ego in all matters alleged within this Complaint.

60.     Defendant Monsanto Company ("Monsanto") was the parent corporation of Searle and is a Delaware corporation. At all times relevant hereto, Monsanto, through its subsidiary

- 15 -                                                       COMPLAINT

1    companies, was in the business of manufacturing, marketing, selling and distributing the

2    pharmaceutical product CELEBREX nationwide.

3      61.    Defendant Pharmacia Corporation ("Pharmacia ") is a Delaware corporation with

4    its principal place of business in New Jersey. At all relevant times, Pharmacia, and its

5    predecessors in interest have been engaged in the business of designing, testing, manufacturing,

6    packaging, marketing, distributing, promoting, and selling CELEBREX nationwide and in

7    

8    California.

9                    **II.    JURISDICTION AND VENUE**

10     62.    This is an action for damages, which exceeds seventy-five thousand dollars

11   ($75,000.00).

12     63.    There is complete diversity of citizenship between the Plaintiffs and Defendants.

13   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332

14   (diversity jurisdiction) because the amount in controversy exceeds $75,000.00, and because there

15   is complete diversity of citizenship between Plaintiffs and Defendants.

16     64.    Venue is proper in this United States Judicial District pursuant to 28 U.S.C.A.

17   § 1391. Defendants marketed, advertised and distributed the dangerous product in the district,

18   thereby receiving substantial financial benefit and profits the dangerous product in this district,

19   and reside in this district under 28 U.S.C.A. § 1391(c), such that venue is proper.

20     65.    At all relevant times herein, Defendants were in the business of designing,

21   manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and

22   selling their product, CELEBREX. Defendants at all times relevant hereto designed, developed,

23   manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce

24   the aforementioned prescription drug. Defendants do substantial business Nationwide and within

25   this Federal Judicial District, advertise in this district, receive substantial compensation and

26   profits from sales of CELEBREX in this District, and made material omissions and

27   misrepresentations and breaches of warranties in this District so as to subject them to *in personam*

28   

- 16 -                                        COMPLAINT

1  jurisdiction in this District. In engaging in the conduct alleged herein each defendant acted as the

2  agent for each of the other defendants, or those defendant's predecessors in interest.

3  ## III.    INTERDISTRICT ASSIGNMENT

4  66.    Assignment to the San Francisco Division is proper as this action is related to *In*

5  *Re: Celebrex and Celebrex Marketing Sales Prac. and Pro. Liab. Lit.*, MDL-1699, assigned to the

6  Honorable Charles R. Breyer by the Judicial Panel on Multidistrict Litigation on September 6,

7  2005. (See also, MDL-1699 Pretrial Order No. 2)

8  ## IV.    FACTUAL BACKGROUND

9  ### A.    Facts Regarding All Plaintiffs

10  67.    Plaintiffs and Plaintiffs' healthcare providers were at the time of Plaintiffs' injuries

11  unaware - and could not have reasonably known or have learned through reasonable diligence -

12  that such injury directly resulted from Defendants' negligent and otherwise culpable acts,

13  omissions, and misrepresentations or from Plaintiffs' ingestion of CELEBREX.

14

15  68.    Plaintiffs used CELEBREX in a proper and reasonably foreseeable manner and

16  used it in a condition that was substantially the same as the condition in which it was

17  manufactured and sold.

18  69.    Plaintiffs would not have used CELEBREX had Defendants properly disclosed the

19  risks associated with the drug.

20  ### B.    Facts Regarding CELEBREX: Science and other Cox-2 Inhibitors

21  64.    CELEBREX is one of a class of pain medications called non-steroidal anti-

22  inflammatory drugs ("NSAIDs"). Aspirin, naproxen (trade name Aleve), and ibuprofen (trade

23  name Advil) are examples of well-known NSAIDs.

24

25  65.    NSAIDs reduce pain by blocking the body's production of pain transmission

26  enzymes called cyclo-oxygenase or "COX." There are two forms of COX enzymes—COX-1 and

27  COX-2. Aspirin, naproxen and ibuprofen all act by blocking COX-1 and COX-2 enzymes.

28

- 17 -                                                         COMPLAINT

66.     In addition to decreasing inflammation, the prostaglandins that are supported by COX-1 enzymes are involved in the production of gastric mucus; this protects the stomach wall from the hydrochloric acid present in the stomach. It is generally accepted in the medical community that by blocking the COX-1 enzyme, the body's ability to protect gastric tissue is hampered and as a result, can cause harmful gastrointestinal side effects, including stomach ulceration and bleeding.

67.     Prostaglandin I2 is the predominant cyclooxygenase product in endothelium, inhibiting platelet aggregation (preventing clot formation), causing vasodilation, and preventing the proliferation of vascular smooth muscle. Whereas older NSAIDS inhibit Thromboxane A2 and Prostaglandin I2, the COX-2 inhibitors leave Thromboxane A2 unaffected. Thromboxane A2 is a potent platelet aggregator and vasoconstrictor which is synthesized by platelets. Therefore, while the older NSAIDS suppress platelet aggregation and vasoconstriction, the COX-2 inhibitors support it.

68.     Traditional NSAIDs like aspirin reduce pain/inflammation and therefore pain by inhibiting both COX-1 and COX-2 enzymes simultaneously. As would be expected, traditional NSAIDs may cause ulcers in the stomach. However, traditional NSAIDs do not cause blood clots, rather they actually reduce the risk of clots and help protect heart function.

69.     Defendants and other pharmaceutical companies set out to remedy these ulcer and bleeding problems suffered by some NSAID users by developing "selective" inhibitors that would block only COX-2 production, thus (supposedly) allowing the proper maintenance of gastric tissue while still reducing inflammation.

70.     In making this decision, Defendants and their predecessors in interest either intentionally ignored or recklessly disregarded current medical knowledge that selective COX-2 inhibition lowers prostacyclin levels and causes thromboxane $A_2$ to be uninhibited, causing blood clots, and giving rise to various clot-related cardiovascular events, including heart attack, stroke, unstable angina. The vasoconstriction and fluid retention cause the hypertension.

- 18 -                                        COMPLAINT

71.     Pfizer launched CELEBREX, the first of the three major COX-2 inhibitor drugs, in January 1999 and initiated a massive marketing campaign to convince doctors and consumers of the superiority of their new "blockbuster" drug over less inexpensive NSAIDs. In May, 1999, Merck & Co., Inc. ("Merck") launched Vioxx, its own selective COX-2 inhibitor.

72.     Seeking increased market share in this extremely lucrative market, Defendants, and their predecessors in interest, also sought approval of a "second generation" selective COX-2 inhibitor and filed for FDA approval of Celecoxib (Celebrex) on January 16, 2001 for the (i) prevention and treatment of acute pain, (ii) treatment of primary dysmenorrhea, and (iii) relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis.

### C.     Facts Regarding CELEBREX's Safety and Defendants' Knowledge Thereof

73.     The potential for cardiovascular risk of selective COX-2 inhibitors was known to Defendants long before the market launch.  By 1997, and prior to the submission of the New Drug Application (the "NDA") for CELEBREX, Defendants was aware that, by inhibiting COX-2, CELEBREX altered the homeostatic balance between prostacylcin synthesis and thromboxane and thereby, increased the prothrombotic effects of the drugs, causing blood clots to form in those who ingested it. *See* Topol, E.J., *et al.*, *Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors*, *JAMA*, August 22, 2001 at 954.

74.     As Pharmacologist, Dr. Garrett Fitzgerald, of the University of Pennsylvania, reported in an editorial published in *The New England Journal of Medicine* on October 21, 2004, that it was known as early as 1999 that selective COX-2 inhibitors, such as CELEBREX, suppressed the formation of prostaglandin I-2 in healthy volunteers, inhibited platelet aggregation in vitro, and may predispose patients to myocardial infarction or thrombotic stroke.

75.     Based on the studies performed on CELEBREX, other COX-2 inhibitors, and basic research on this type of selective inhibitor which had been widely conducted, Defendants knew when CELEBREX was being developed and tested that selective COX-2 inhibitors posed serious cardiovascular risks for anyone who took them, and presented a specific additional threat to anyone with existing heart disease or cardiovascular risk factors.  Studies show that selective

- 19 -                                                        COMPLAINT

1

2

3

4

COX-2 inhibitors, including CELEBREX, decrease blood levels of a prostacyclin. When those levels fall, the arteries are more vulnerable to clotting, high blood pressure, heart attack, and stroke.

5

6

7

8

9

76.     Despite years of studies on selective COX-2 inhibitors, as well as the disturbing new studies specifically analyzing the risks of CELEBREX, Defendants failed to take any action to protect the health and welfare of patients, but instead, continued to promote the drug for sale even after the FDA's Drug Safety and Risk Management Advisory Committee and Arthritis Drug Advisory Committee meetings.

10

### 1.     **CELEBREX and Cox-2 Studies Did Not Show CELEBREX to be Safe**

11

12

13

14

15

16

77.     The defendants touted the CELEBREX Long-Term Arthritis Safety Study ("CLASS") as the primary evidence to support its theory that CELEBREX was safer for consumers that could not tolorate traditional NSAIDs in their gastrointestinal system. (CLASS data is found in NDA 20-998/S-009 submitted to the FDA by G.D. Searle on June 12, 2000. CLASS was submitted to the FDA on June 12, 2000 and reviewed by James Witter, M.D., Ph.D. (FDA Medical Officer) on September 20, 2000.)

17

### 2.     **CLASS**

18

19

20

21

22

23

78.     The FDA Medical Officer Review of the CLASS data proves CELEBREX is no more efficacious than other traditional NSAIDS and is harmful to consumers. See generally, FDA Medical Officer Review, NDA 20-998/S-009 submitted to the FDA by G.D. Searle on June 12, 2000 ("FDA CLASS Review"). On April 7, 2005, the FDA issued an *Alert* noting only minimal information is available regarding CELEBREX: "The only available data from a long term comparison of CELEBREX to other NSAIDs came from the CLASS study...."

24

25

26

27

28

79.     Pfizer misrepresented the data in CLASS by using biased authors. According to the *Washington Post* the CLASS authors were either employees of Pharmacia, CELEBREX's manufacturer, or paid consultants of the company. Pfizer needed a study to demonstrate that its Cox-2 inhibitor was safer for the stomach than older cheaper medications: CLASS was designed to be that study. Unfortunately, the results of the completed study revealed the truth –

- 20 -                                                    COMPLAINT

1
2
3

CELEBREX offered no gastrointestinal (Gl) benefit. Instead of releasing the complete –12-month – results from CLASS, Pfizer had only the first six months of data published in the Journal of American Medicine. JAMA 2000, 48:1455-1460.

4
5
6
7
8
9
10
11

80.     "After reviewing the full study, the FDA's arthritis advisory committee concluded that CELEBREX offers no proven safety advantage over the two older drugs in reducing the risk of ulcer complications, said FDA spokesman Susan Cruzan." *Washington Post,* August 5, 2001. According to the FDA's review of the CLASS data: "Celecoxib did not demonstrate any statistical superiority to NSAIDs (pooled) or either comparator (diclofenac and ibuprofen) with regards to the primary safety endpoint of CSUGIE (Clinically Significant Upper Gastrointestinal Adverse Events) at any point in the trial although there were trends that favored celecoxib" (FDA CLASS Review).

12
13
14
15
16

81.     According to an August 5, 2001 article in the *Washington Post*, editors of the Journal of the American Medical Association (JAMA) and other medical experts, "were flabbergasted" when they realized they had been duped by only being provided with the first six months of CLASS data. The Washington Post reported JAMA editors as saying: "When all of the data were considered, most of CELEBREX's apparent safety advantage disappeared."

17
18
19
20
21

82.     The "scientific double-cross" boosted sales. "[T]he JAMA article and editorial have likely contributed to CELEBREX's huge sales. 'When the JAMA article comes out and confirms the hype, that probably has more impact than our labeling does,' said Robert J. Temple, director of medical policy at the FDA's Center for Drug Evaluation and Research." *Washington Post*, August 5, 2001.

22
23
24
25
26
27
28

83.     "A total of 36 deaths occurred during the [CLASS] study or during post study follow-up: 19 in the celecoxib group, 9 in the diclofenac group and 8 in the ibuprofen group . . . . Most deaths were cardiovascular in nature." FDA CLASS Review, at 54. The increased number of adverse cardiovascular events in the CELEBREX group was not surprising as they were also revealed in the original New Drug Application (NDA) submitted for CELEBREX. "In the original NDA, myocardial infarction was noted to occur at a higher rate in celecoxib-treated as compared to placebo treated patients. In the long term trial (Trial 024) that was included in the

- 21 -                                                            COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NDA submission, the predominate (>90%) cause of death for patients taking celecoxib at any does was cardiovascular." FDA CLASS Review at 78.

84.     Public Citizen, a public watchdog organization, reviewed the CLASS data in its entirety. A complete review reveals the combined anginal adverse events were 1.4% in celecoxib (CELEBREX) group versus 1.0% in either NSAID group. Specifically, the rate of heart attack in the CELEBREX was double that of the other two NSAIDs, 0.2% vs. 0.1%, respectively.

85.     The CLASS data proves that Pfizer knew that its first generation Cox-2 inhibitor, CELEBREX, caused a disproportionately and statistically significantly high number of adverse cardiovascular events before it was introduced to the market in January 1999. According to Public Citizen, after CLASS, the FDA recommended a trial to specifically assess the CV risk of COX-2 inhibitors. The Adenoma Prevention with Celecoxib (APC) trial was intended to be this placebo-controlled trial of CELEBREX.

### 3.     **APC Trial**

86.     The Adenoma Prevention with Celecoxib (APC) trial compared the efficacy and safety of celecoxib with placebo. N.ENG. J. MED. 352;11 at 1072. According to the APC trial, the number of deaths from cardiovascular causes was significantly higher in the CELEBREX group when compared to placebo. (0.1% placebo; 0.4% CELEBREX 200mg; and 0.9% CELEBREX 400mg). Id. at 1075.

87.     The FDA Reported the APC data as follows[1]:

> **i.** In the National Cancer Institute's Adenoma Prevention with Celecoxib (APC) trial in patients at risk for recurrent colon polyps, a 2-3 fold increased risk of serious adverse CV events was seen for CELEBREX compared to placebo after a mean duration of treatment of 33 months. There appeared to be a dose response relationship, with a hazard ratio of 2.5 for CELEBREX 200 mg twice daily and 3.4 CELEBREX 400 mg twice daily for the composite endpoint of death from CV causes, myocardial infarction (MI), or stroke.

88.     The dosage noted in the study is important for two reasons: first, there appears to be an association between dosage and the increase in adverse cardiovascular events.   See

---

[1] April 7, 2005 FDA Alert: www.fda.gov/cder/drug/infopage/CELEBREX/CELEBREX-hcp.htm.

generally, at 1077. Second, most patients increase dosage. Pfizer knew patients were increasing their dosages as noted in CLASS: "Interestingly ... up to 70% of patients increased their dose for celecoxib." FDA CLASS Review at 74. Thus, Pfizer was aware of the dosage creep.

### 4. Other CELEBREX Trials

89. Several other CELEBREX trials also gave Defendants insight into the cardiovascular risks presented by CELEBREX. The Prevention of Spontaneous Adenomatous Polyps (PreSAP) trial identified the death rate from cardiovascular causes (heart attack, stroke, heart failure, angina, or need for CV procedure) as 3.6% with CELEBREX as compared to 2.7% for placebo.

90. Public Citizen also reviewed the results of Study IQ IQ5-97-02-001 which reflected "the combined rate of all serious cardiovascular adverse events in patients getting a placebo was 2.1% but was greatly increased in those getting celecoxib to 7.7%, a 3.6 fold increase in CV risk in those people taking celecoxib. $(p=0.03)$"[2]. According to Dr. Sidney Wolfe, "The study revealed a significantly increased rate (3.6-fold) of serious CV adverse events and more than a doubling in the rate of CV deaths in people using celecoxib compared to those using placebo."[3]

### 5. Cox-2 Studies: VIGOR and APPROVe

91. Pfizer also had access to other data which indicated a cardiovascular risk with its drugs. Specifically, Pfizer had knowledge of two studies conducted by Merck related to its Cox-2 inhibitor Vioxx – Vioxx Gastrointestinal Outcomes Research (VIGOR) and Adenomatous Polyp Prevention (APPROVe).

#### a. VIGOR

92. In 2000, The FDA Medical Officer Review of CLASS specifically noted the VIGOR trial and the concern over serious adverse cardiovascular events. FDA CLASS Review at 78.

---

[2] *Public Citizen*, January 26, 2005, Dr. Sidney M. Wolfe.
[3] Id.

COMPLAINT

93.    According to VIGOR (near acronym for Vioxx Gastrointestinal Outcomes Research) Vioxx patients experienced 20% more serious clinical adverse events (statistically significant); they experienced 4.6 times more hypertension events serious enough to warrant discontinuation, 1.7 times more edema events, and 1.85 times as many congestive heart failure adverse events. By two measures of cardiovascular events related to blood clots, Vioxx had twice the risk of naproxen and the results were considered statistically significant.

94.    The VIGOR study comprised the most definitive scientific evidence ever obtained about pharmaceutical products. It was a large, randomized clinical trial, the gold standard of medical research. It was a safety study with endpoints set in advance. As Merck stated many times, it was designed to provide definite proof of safety, convincing enough to silence the most skeptical critics. In medical terms, the VIGOR results raised the question of whether selective inhibition of Cox-2 was a monumental mistake from the start. While the NSAID risks to the GI system were real and sometimes fatal, they were dwarfed by the cardiovascular risks of the arthritis population that needed these drugs on a daily basis. All makers of NSAIDs, including Defendants, were aware of these results.

### b.    APPROVe

95.    Anxious to put safety questions surrounding Vioxx to rest, Merck designed another large scale trial, Adenomatous Polyp Prevention (APPROVe), which was intended to test the drug's ability to prevent or shrink colon polyps, but would also compare the cardiovascular safety of Vioxx to a placebo control. According to the analysis conducted by Public Citizen of the APPROVe data: Vioxx "doubled the risk of any thrombotic cardiovascular event" and "doubled the risk of MI (myocardial infarction a/k/a heart attack)[4]. *Public Citizen*, January 24, 2005, at 15. Despite the available CELEBREX data and other information related to Vioxx, Pfizer never paused to re-evaluating the CELEBREX data and studies.

---

[4] Although Merck claims that the two-fold risk of heart attacks and strokes seen in the APPROVe trial did not emerge until after patients had been taking the drug for 18 months, closer analysis indicates that significant increase in risk of heart attack was evident in as little as 4 months time.

96. The scientific data available during and after CELEBREX's approval process made clear to Defendants that their formulation of CELEBREX would cause a higher risk of blood clots, stroke and/or myocardial infarctions among CELEBREX consumers, alerting them to the need to do additional and adequate safety studies.

97. As stated by Dr. Topol on October 21, 2004, in *The New England Journal of Medicine*, outlining Defendants' failure to have conducted the necessary trials before marketing to humans " . . . it is mandatory to conduct a trial specifically assessing cardiovascular risk and benefit of (COX-2 inhibitors). Such a trial needed to be conducted in patients with established coronary artery disease, who frequently have coexisting osteoarthritis requiring medication and have the highest risk of further cardiovascular events."

98. Dr. Topol was also the author on the study published in August 2001 in JAMA (listed above) that reported an increased risk of thrombotic cardiovascular events in persons who used COX-2 inhibitors.

99. Based upon readily available scientific data, Defendants knew, or should have known, that their pre-approval testing of CELEBREX did not adequately represent the cross-section of individuals who were intended consumers and therefore, likely to take CELEBREX. Therefore, Defendants' testing and studies were grossly inadequate.

100. Had Defendants done adequate testing prior to approval and "market launch," rather than the extremely short duration studies done on the small size patient base that was actually done the defendants' scientific data would have revealed significant increases in incidence of strokes and myocardial infarctions among the intended and targeted population of CELEBREX consumers. Adequate testing would have shown that CELEBREX possessed serious side effects. Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

101.    In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but Defendants intentionally suppressed this information in order for them to gain significant profits from continued CELEBREX sales.

102.    Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

103.    At the time Defendants manufactured, advertising, and distributed CELEBREX to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase CELEBREX, but instead would purchase other cheaper and safer NSAIDs.

## D.    Facts Regarding Defendants' Marketing and Sale of CELEBREX

104.    Such an ineffective and unreasonably dangerous drug could only be widely prescribed as a result of a tremendous marketing campaign.  In addition to being aggressive, the Defendants' marketing campaign was fraudulent and misleading.  But for fraudulent and misleading advertising, consumers, including the Plaintiff, would not have purchased CELEBREX, a more costly prescriptive drug, ineffective for its intended purposes.

105.    On January 10, 2005 the FDA issued Pfizer a written reprimand for its promotional activities.  The reprimand reads: "These five promotional pieces [3 CELEBREX and 2 Celebrex] variously: omit material facts … and make misleading safety, unsubstantiated superiority, and unsubstantiated effectiveness claims."  This was not the Defendants first offense related to its Cox-2 inhibitors.  The FDA also reprimanded Pfizer on October 6, 1999 noting: "DDMAC has reviewed these promotional pieces and has determined that they are false or misleading because they contain unsubstantiated comparative claims, misrepresentations of CELEBREX's safety profile, and are lacking in fair balance."  Ultimately, on April 8, 2005, the New York Times reported the results of an FDA advisory panel: "The February advisory panel voted overwhelmingly that the company should never again advertise the drug [CELEBREX]."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

106.    At all times relevant herein, Defendants engaged in a marketing campaign with the intent that consumers would perceive CELEBREX as a safer and better drug than its other NSAIDs and, therefore, purchase CELEBREX.

107.    Defendants widely and successfully marketed CELEBREX throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of CELEBREX in order to induce a widespread use and consumption. CELEBREX was represented to aid the pain and discomfort of arthritis, osteoarthritis, and related problems. Defendants made misrepresentations by means of media advertisements, and statements contained in sales literature provided to Plaintiff's prescribing physicians.

108.    Despite knowledge of the dangers presented by CELEBREX, Defendants and Defendants' predecessors in interest, through their officers, directors and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' product, CELEBREX, and failed to warn the public, including Plaintiff, of the serious risk of injury occasioned by the defects inherent in Defendants' product, CELEBREX. Defendants and their officers, agents and managers intentionally proceeded with the inadequate safety testing, and then the manufacturing, sale and marketing of Defendants' product, CELEBREX, knowing that persons would be exposed to serious potential danger, in order to advance their own pecuniary interests. Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the public and particularly of Plaintiff.

109.    In an elaborate and sophisticated manner, Defendants aggressively marketed CELEBREX directly to consumers and medical professionals (including physicians and leading medical scholars) in order to leverage pressure on third party payors, medical care organizations, and large institutional buyers (*e.g.*, hospitals) to include CELEBREX on their formularies. Faced with the increased demand for the drug by consumers and health care professionals that resulted from Defendants' successful advertising and marketing blitz, third party payors were compelled to add CELEBREX to their formularies. Defendants' marketing campaign specifically targeted

COMPLAINT

third party payors, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of CELEBREX.

110.    Defendants represented that CELEBREX was similar to ibuprofen and naproxen but was superior because it lacked any of the common gastrointestinal adverse side effects associated with these and other non-steroidal anti-inflammatory drugs ("NSAIDS"). For instance, NSAIDS can, in certain patients, cause gastrointestinal perforations, ulcers and bleeding with long-term use. Defendants promoted CELEBREX as a safe and effective alternative that would not have the same deleterious and painful impact on the gut, but that would be just as effective, if not more so, for pain relief.

111.    CELEBREX possessed dangerous and concealed or undisclosed side effects, including the increased risk of serious cardiovascular events, such as heart attacks, unstable angina, cardiac clotting, deep vein thrombosis, hypertension, and cerebrovascular events, such as strokes. In addition, CELEBREX was no more effective than traditional and less expensive NSAIDs and, just like traditional NSAIDs, carried a risk of perforations, ulcers, and gastrointestinal bleeding. Defendants chose not to warn about these risks and dangers.

112.    Defendants knew of these risks before the U.S. Food and Drug Administration (the "FDA") approved CELEBREX for sale, but Defendants ignored, downplayed, suppressed, omitted, and concealed these serious safety risks and denied inefficacy in its promotion, advertising, marketing, and sale of CELEBREX. Defendants' omission, suppression, and concealment of this important information enabled CELEBREX to be sold to, and purchased, or paid for by, the Consumers at a grossly inflated price.

113.    Consequently, CELEBREX captured a large market share of anti-inflammatory drugs prescribed for and used by patients. In 2004 alone, sales of CELEBREX exceeded $2 billion, despite the significantly higher cost of CELEBREX as compared to other pain relievers in the same family of drugs.

114.    Because Defendants engaged in a promotional and marketing campaign that featured an advertising blitz directly targeted to consumers, that touted CELEBREX as a safer

- 28 -                                    COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

drug than other drugs in its class, while uniformly failing to disclose the health risks of CELEBREX, Defendants were able to justify pricing CELEBREX significantly higher than the cost of generic aspirin. In reality, that price inflation was not justified. Had Defendants disclosed the truth about CELEBREX, Defendants would not and could not have reaped the billions of dollars in CELEBREX sales that were achieved as a direct result of the concealment, omission, suppression, and obfuscation of the truth.

115.    The Defendants intentionally, deliberately, knowingly, and actively concealed, omitted, suppressed, and obfuscated important and material information regarding the risks, dangers, defects, and disadvantages of CELEBREX from Plaintiff, the public, the medical community, and the regulators. This concealment and omission was deliberate, knowing, active, and uniform, was intended to induce and maximize sales and purchases of CELEBREX, and prevented Plaintiff from obtaining all the material information that would be important to their decisions as reasonable persons to purchase, pay for, and/or use CELEBREX.

116.    Defendants' systematic, active, knowing, deliberate, and uniform concealment, omissions, suppression, and conduct caused Plaintiff to purchase, pay for, and/or use CELEBREX; and caused Plaintiff's losses and damages as asserted herein.

117.    Had Defendants done adequate testing prior to approval and "market launch," the defendants' scientific data would have revealed significant increases in stroke and myocardial infarction amongst the intended population of CELEBREX consumers. Adequate testing would have shown that CELEBREX possessed serious side effects. Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

118.    In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but Defendants intentionally suppressed this information in order for them to gain significant profits from continued CELEBREX sales.

COMPLAINT

119.    Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

120.    At the time Defendants manufactured, advertising, and distributed CELEBREX to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase CELEBREX, but instead would purchase other cheaper and safer NSAID drugs.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Negligence

121.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows.

122.    Defendants owed Plaintiffs a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling CELEBREX. This duty included the duty not to introduce a pharmaceutical drug, such as CELEBREX, into the stream of commerce that caused users to suffer from unreasonable, dangerous or untoward adverse side effects.

123.    At all relevant times to this action, Defendants owed a duty to properly warn Plaintiffs and the Public of the risks, dangers and adverse side effects of their pharmaceutical drug CELEBREX.

124.    Defendants breached their duties by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, labeling, marketing, promotion, advertising and selling of CELEBREX, including:

      a        failing to use due care in the preparation and development of CELEBREX to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

      b        failing to use due care in the design of CELEBREX to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

- 30 -                                                                                          COMPLAINT

1

2          c       failing to conduct adequate pre-clinical testing and research to determine
           the safety of CELEBREX;

3          d       failing to conduct adequate post-marketing surveillance and exposure
4          studies to determine the safety of CELEBREX;

5          e       failing to completely, accurately and in a timely fashion, disclose the
           results of the pre-marketing testing and post-marketing surveillance and testing to
6          Plaintiffs, consumers, the medical community, and the FDA;

7          f       failing to accompany CELEBREX with proper warnings regarding all
8          possible adverse side effects associated with the use of CELEBREX;

9          g       failing to use due care in the manufacture, inspection, and labeling of
           CELEBREX to prevent the aforementioned risk of injuries to individuals who used
10         CELEBREX;

11         h       failing to use due care in the promotion of CELEBREX to prevent the
12         aforementioned risk of injuries to individuals when the drugs were ingested;

13         i       failing to use due care in the sale and marketing of CELEBREX to prevent
           the aforementioned risk of injuries to individuals when the drugs were ingested;
14

15         j       failing to use due care in the selling of CELEBREX to prevent the
           aforementioned risk of injuries to individuals when the drugs were ingested;
16

17         k       failing to provide adequate and accurate training and information to the
           sales representatives who sold CELEBREX;

18         l       failing to provide adequate and accurate training and information to
19         healthcare providers for the appropriate use of CELEBREX; and

20         m       being otherwise reckless, careless and/or negligent.

21         125.    Despite the fact that Defendants knew or should have known that CELEBREX

22  caused unreasonable and dangerous side effects which many users would be unable to remedy by

23  any means, Defendants continued to promote and market CELEBREX to consumers, including

24  Plaintiffs, when safer and more effective methods of pain relief were available.

25         126.    Defendants were, or should have been, had they exercised reasonable care, in

26  possession of evidence demonstrating that CELEBREX caused serious side effects. Nevertheless,

27  they continued to market their products by providing false and misleading information with

28  regard to the safety and efficacy of CELEBREX.

                                              - 31 -                              COMPLAINT

127.   Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to exercise ordinary care as described above.

128.   As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, Plaintiffs sustained serious injuries and related losses. Plaintiffs required and will continue to require healthcare and services. Plaintiffs have incurred and will continue to incur medical and related expenses. Plaintiffs also have suffered and will continue to suffer mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs also incurred direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiffs have also suffered loss of wages.

129.   Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### Strict Liability

130.   Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows.

131.   At all times relevant to this action, Defendants were suppliers of CELEBREX, placing the drug into the stream of commerce. CELEBREX was expected to and did reach Plaintiffs without substantial change in the condition in which it was manufactured and sold.

132.   CELEBREX was unsafe for normal or reasonably anticipated use.

133.   CELEBREX was defective in design or formulation because when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous and more dangerous than an ordinary consumer would expect. CELEBREX was also defective and unreasonably dangerous in

1    that the foreseeable risk of injuries from CELEBREX exceeded the benefits associated with the

2    design and/or formulation of the product.

3          134.    Celebrex is unreasonably dangerous: a) in construction or composition; b) in

4    design; c) because an adequate warning about the product was not provided; d) because it does

5    not conform to an express warranty of the manufacturer about the product.

6          135.    The characteristics of Celebrex that render it unreasonably dangerous under

7    existed at the time the product left the control of the manufacturer or resulted from a

8    reasonably anticipated alteration or modification of the product.

9          136.    The CELEBREX manufactured and supplied by Defendants was also defective

10   due to inadequate warnings, and/or inadequate clinical trials, testing and study, and inadequate

11   reporting regarding the results of the clinical trials, testing and study.  Defendants failed to

12   perform adequate testing before exposing Plaintiffs to the medication, testing which would have

13   shown that CELEBREX had the potential to cause serious side effects including strokes like that

14   which affected Plaintiffs.

15         137.    The CELEBREX manufactured and supplied by Defendants was defective due to

16   inadequate post-marketing warnings or instructions because, after Defendants knew or should

17   have known of the risk of injuries from CELEBREX, they failed to provide adequate warnings to

18   the medical community and the consumers, to whom they were directly marketing and

19   advertising CELEBREX; and, further, it continued to affirmatively promote CELEBREX as safe

20   and effective.

21         138.    CELEBREX was manufactured, distributed, tested, sold, marketed, advertised and

     promoted defectively by Defendants, and as a direct and proximate cause of Defendants'

22   defective design of CELEBREX, Plaintiffs used CELEBREX rather than other safer and cheaper

23   NSAIDs.  As a result, Plaintiffs suffered the personal injuries described above.

24         139.    Information given by Defendants to the medical community and to the consumers

25   concerning the safety and efficacy of CELEBREX, especially the information contained in the

26   advertising and promotional materials, did not accurately reflect the potential side effects of

27   CELEBREX.

28

                                              - 33 -                                    COMPLAINT

140.    Had adequate warnings and instructions been provided, Plaintiffs would not have taken CELEBREX as they did, and would not have been at risk of the harmful side effects described herein.

141.    Defendants acted with conscious and deliberate disregard of the foreseeable harm caused by CELEBREX.

142.    Plaintiffs could not, through the exercise of reasonable care, have discovered CELEBREX's defects or perceived the dangers posed by the drug.

143.    As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, Plaintiffs sustained serious injuries and related losses. Plaintiffs required and will continue to require healthcare and services. Plaintiffs have incurred and will continue to incur medical and related expenses. Plaintiffs also have suffered and will continue to suffer mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs also incurred direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiffs have also suffered loss of wages.

144.    Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and punitive and exemplary damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

145.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows.

146.    Defendants expressly represented to Plaintiffs and other consumers and the medical community that CELEBREX was safe and fit for its intended purposes, that it was of

merchantable quality, that it did not produce any dangerous side effects, particularly any unwarned-of side effects, and that it was adequately tested.

147.    These warranties came in the form of:

a.    Defendants' public written and verbal assurances of the safety and efficacy of CELEBREX;

b.    Press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create an increased demand for CELEBREX, which failed to warn of the risk of injuries inherent to the ingestion of CELEBREX, especially to the long-term ingestion of CELEBREX;

c.    Verbal and written assurances made by Defendants regarding CELEBREX and downplaying the risk of injuries associated with the drug;

d.    False and misleading written information, supplied by Defendants, and published in the Physician's Desk Reference on an annual basis, upon which physicians relied in prescribing CELEBREX during the period of Plaintiffs' ingestion of CELEBREX, and;

e.    advertisements.

148.    The documents referred to above were created by and at the direction of Defendants.

149.    Defendants knew or had reason to know that CELEBREX did not conform to these express representations in that CELEBREX is neither as safe nor as effective as represented, and that CELEBREX produces serious adverse side effects.

150.    CELEBREX did not and does not conform to Defendants' express representations because it is not safe, has numerous and serious side effects, including unwarned-of side effects, and causes severe and permanent injuries.

151.    Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

152.    As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, Plaintiffs sustained serious injuries and related losses. Plaintiffs required and will continue to require healthcare and services.  Plaintiffs have incurred

1  and will continue to incur medical and related expenses. Plaintiffs also have suffered and will

2  continue to suffer mental anguish, physical pain and suffering, diminished capacity for the

3  enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of

4  preexisting conditions and activation of latent conditions, and other losses and damages.

5  Plaintiffs also incurred direct medical losses and costs include care for hospitalization, physician

6  care, monitoring, treatment, medications, and supplies. Plaintiffs have also suffered loss of wages.

7      153.    Defendants' conduct was committed with knowing, conscious, wanton, willful,

8  and deliberate disregard for the value of human life and the rights and safety of consumers,

9  including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to

10  punish Defendants and deter them from similar conduct in the future.

11      WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory

12  damages, and punitive and exemplary damages together with interest, the costs of suit and

13  attorneys' fees and such other and further relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### Breach of Implied Warranty

15      154.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if

16  fully set forth herein and further allege as follows.

17      155.    Defendants    manufactured,    distributed,    advertised,    promoted,    and    sold

18  CELEBREX.

19      156.    At all relevant times, Defendants knew of the use for which CELEBREX was

20  intended and impliedly warranted the product to be of merchantable quality and safe and fit for

21  such use.

22      157.    Defendants were aware that consumers, including Plaintiffs, would use

23  CELEBREX for treatment of pain and inflammation and for other purposes.

24      158.    Plaintiffs and the medical community reasonably relied upon Defendants'

25  judgment and expertise to only sell them or allow them to prescribe CELEBREX only if it was

26  indeed of merchantable quality and safe and fit for its intended use. Consumers, including

27  Plaintiffs, and the medical community, reasonably relied upon Defendants' implied warranty for

28  CELEBREX.

COMPLAINT

159.    CELEBREX reached consumers, including Plaintiffs, without substantial change in the condition in which it was manufactured and sold by Defendants.

160.    Defendants breached their implied warranty to consumers, including Plaintiffs; CELEBREX was not of merchantable quality or safe and fit for its intended use.

161.    As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, Plaintiffs sustained serious injuries and related losses. Plaintiffs required and will continue to require healthcare and services. Plaintiffs have incurred and will continue to incur medical and related expenses. Plaintiffs also have suffered and will continue to suffer mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs also incurred direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiffs have also suffered loss of wages.

162.    Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages and punitive and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### Fraudulent Misrepresentation & Concealment

163.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows.

164.    Defendants' superior knowledge and expertise, their relationship of trust and confidence with doctors and the public, their specific knowledge regarding the risks and dangers of CELEBREX, and their intentional dissemination of promotional and marketing information about CELEBREX for the purpose of maximizing its sales, each gave rise to the affirmative duty

COMPLAINT

1   to meaningfully disclose and provide all material information about CELEBREX's risks and

2   harms to doctors and consumers.

3       165.    Defendants made fraudulent affirmative misrepresentations with respect to

4   CELEBREX in the following particulars:

5       a.      Defendants represented through their labeling, advertising, marketing

6   materials, detail persons, seminar presentations, publications, notice letters, and regulatory

7   submissions that CELEBREX had been tested and found to be safe and effective for the treatment

8   of pain and inflammation; and

9       b.      Defendants represented that CELEBREX was safer than other alternative

10  medications.

11      166.    Defendants made affirmative misrepresentations; and fraudulently, intentionally

12  and/or recklessly concealed material adverse information regarding the safety and effectiveness of

13  CELEBREX.

14      167.    Defendants made these misrepresentations and actively concealed adverse

15  information at a time when Defendants knew or had reason to know that CELEBREX had defects

16  and was unreasonably dangerous and was not what Defendants had represented to the medical

    community, the FDA and the consuming public, including Plaintiffs.

17      168.    Defendants omitted, suppressed and/or concealed material facts concerning the

18  dangers and risk of injuries associated with the use of CELEBREX including, but not limited to,

19  the cardiovascular, cerebrovascular, and other serious health risks.  Furthermore, Defendants'

20  purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the

21  serious nature of the risks associated with the use of CELEBREX in order to increase its sales.

22      169.    The representations and concealment were undertaken by Defendants with an

23  intent that doctors and patients, including Plaintiffs, rely upon them.

24      170.    Defendants' representations and concealments were undertaken with the intent of

25  defrauding and deceiving Plaintiffs, other consumers, and the medical community to induce and

26  encourage the sale of CELEBREX.

27      171.    Defendants' fraudulent representations evinced their callous, reckless, willful, and

28  depraved indifference to the health, safety, and welfare of consumers, including Plaintiffs.

1    172.    Plaintiffs' physician and Plaintiffs relied on and were induced by Defendants'

2    misrepresentations, omissions, and/or active concealment of the dangers of CELEBREX in

3    selecting CELEBREX treatment.

4    173.    Plaintiffs and the treating medical community did not know that the

5    representations were false and were justified in relying upon Defendants' representations.

6    174.    Had Plaintiffs been aware of the increased risk of side effects associated with

7    CELEBREX and the relative efficacy of CELEBREX compared with other readily available

8    medications, Plaintiffs would not have taken CELEBREX as he did.

9    175.    As a direct and proximate consequence of Defendants' acts, omissions, and

10   misrepresentations described herein, Plaintiffs sustained serious injuries and related losses.

11   Plaintiffs required and will continue to require healthcare and services. Plaintiffs have incurred

12   and will continue to incur medical and related expenses. Plaintiffs also have suffered and will

13   continue to suffer mental anguish, physical pain and suffering, diminished capacity for the

14   enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of

15   preexisting conditions and activation of latent conditions, and other losses and damages.

16   Plaintiffs also incurred direct medical losses and costs include care for hospitalization, physician

17   care, monitoring, treatment, medications, and supplies. Plaintiffs have also suffered loss of wages.

     176.    Defendants' conduct was committed with knowing, conscious, wanton, willful,

18   and deliberate disregard for the value of human life and the rights and safety of consumers,

19   including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to

20   punish Defendants and deter them from similar conduct in the future.

21       WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory

22   damages, and punitive and exemplary damages together with interest, the costs of suit and

23   attorneys' fees, and such other and further relief as this Court deems just and proper.

24                                **SIXTH CLAIM FOR RELIEF**

25                                  **Unjust Enrichment**

26   177.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if

27   fully set forth herein and further allege as follows.

28

                                        - 39 -                              COMPLAINT

1  178. At all times relevant to this action, Defendants were the manufacturers, sellers,

2  and/or suppliers of CELEBREX.

3  179. Plaintiffs paid for CELEBREX for the purpose of managing their pain safely and

4  effectively.

5  180. Defendants have accepted payment from Plaintiffs for the purchase of

6  CELEBREX.

7  181. Plaintiffs did not receive the safe and effective pharmaceutical product for which

8  she paid.

9  182. It is inequitable and unjust for Defendants to retain this money because Plaintiffs

10  did not in fact receive the product Defendant represented CELEBREX to be.

11  WHEREFORE, Plaintiffs demand judgment against Defendants and seeks equitable relief,

12  the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and

13  proper.

14

15  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

16

17  1.  General damages in excess of the jurisdictional amount of this Court;

18  2.  Consequential damages;

19  3.  Disgorgement of profits;

20  4.  Restitution;

21  5.  Damages for loss of consortium, care, comfort, society and companionship in an

22  amount within the jurisdiction of this Court and according to proof;

23  6.  Punitive and exemplary damages;

24  7.  Pre-judgment and post-judgment interest as provided by law;

25  8.  Recovery of Plaintiffs' costs including, but not limited to, discretionary Court

costs of these causes, and those costs available under the law, as well as expert fees and attorneys'

26  fees and expenses, and costs of this action; and

27  9.  Such other and further relief as the Court deems just and proper.

28

-40-                                                    COMPLAINT

1    Dated: April ____, 2008

2

3                                  Respectively submitted,

4
                                   By: _____
5                                      Andy D. Birchfield, Jr. (AL State Bar No. BIR006)
                                       Email: andy.birchfield@beasleyallen.com
6                                      Navan Ward, Jr. (AL State Bar No. WAR062)
                                       Email: navan.ward@beasleyallen.com
7                                      Frank Woodson (AL State Bar No. WOO034)
                                       Email: frank.woodson@beasleyallen.com
8                                      BEASLEY, ALLEN, CROW, METHVIN,
9                                      PORTIS & MILES, P.C.
                                       Post Office Box 4160
10                                     Montgomery, Alabama 36103-4160
                                       (334) 269-2343 telephone
11                                     (334) 954-7555 facsimile

12                                     Attorneys for Plaintiffs

13

14                              **DEMAND FOR JURY TRIAL**

15            Plaintiffs demand a trial by jury on all claims so triable in this action.

16

17

18    Dated: April ____, 2007        Respectfully submitted,

19

20                                   By: _____
21                                      Andy D. Birchfield, Jr. (BIR006)
                                       Navan Ward, Jr. (WAR062)
22                                     Frank Woodson (WOO034)
                                       BEASLEY, ALLEN, CROW, METHVIN,
23                                     PORTIS & MILES, P.C.
                                       Post Office Box 4160
24                                     Montgomery, Alabama 36103-4160
                                       Telephone: (334) 269-2343
25                                     Facsimile: (334) 954-7555

26                                     ATTORNEYS FOR PLAINTIFFS

27

28

                                        - 41 -                              COMPLAINT

JS 44 - CAND (Rev. 11/04)

**CRB**



# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

## I.(a) PLAINTIFFS

JOHN ADAMS, et al.

## DEFENDANTS

PFIZER, INC., et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

Dorchester County, South Carolina

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.   New York

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

See attached.

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION   (PLACE AN 'X' IN ONE BOX ONLY)

☐ 1 U.S. Government
    Plaintiff

☐ 2 U.S. Government
    Defendant

☐ 3 Federal Question
    (U.S. Government Not a Party)

☑ 4 Diversity
    (Indicate Citizenship of Parties in
    Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF
(For diversity cases only)                           AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☑ Original
   Proceeding

☐ Removed from
   State Court

☐ Remanded from
   Appellate Court

☐ Reinstated or
   Reopened

☐ Transfered from
   Another district
   (specify)

☑ Multidistrict
   Litigation

☐ Appeal to District
   Judge from Magistrate
   Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury Med Malpractice<br>☑ 365 Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth In Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl.Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (US Plaintiff or Defendant<br>☐ 871 IRS - Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Amer w/ disab - Empl<br>☐ 446 Amer w/ disab - Other<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV | ☐ 510 Motion to Vacate Sentence Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C.A. § 1332

## VII. REQUESTED IN COMPLAINT:   ☐ CHECK IF THIS IS A CLASS ACTION   DEMAND $_____   ☐ CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23   JURY DEMAND ☑ YES ☐ NO

## VIII. RELATED CASE(S)   PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
IF ANY   "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)   ☑ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE   4/4/08   SIGNATURE OF ATTORNEY OF RECORD

ATTACHMENT TO CIVIL COVER SHEET:

Attorneys for Plaintiffs:

Andy D. Birchfield, Jr. (BIR006)
Navan Ward, Jr. (WAR062)
Frank Woodson (WOO034)
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile